### In re HOAGLAND'S ESTATE.

(Supreme Court, Appellate Division, Second Department. January 23, 1903.)

1. COEXECUTORS — DEVASTAVIT BY ACTING EXECUTOR — LIABILITY OF OTHER EXECUTORS.

Testator, by a will, appointed R. (his former partner), defendant, and another as his executors; and substantially all his property, which had been turned over by the testator to his partner shortly before his death, for the purpose of forming a new partnership, was held by such partner as his executor. The latter was the active executor, and was believed to be perfectly trustworthy, and defendant subsequently advanced to him for the purposes of the business over $20,000 of his own funds. Such partner subsequently became bankrupt, and on being ordered to pay over the funds of the estate, failed to do so, and thereafter absconded. *Held*, that defendant was not guilty of any negligence in the performance of his duty as an executor, and was therefore not liable for the devastavit of his coexecutor.

2. PARTNERSHIP — LIABILITY OF INCOMING PARTNER.

Where a testator shortly before his death advanced money to his partner for the purpose of forming a new partnership, a subsequent incoming partner is not liable for the sum so advanced, in the absence of an agreement to assume such liability.

Appeal from surrogate's court, Kings county.

Judicial accounting of Isaac A. Hopper as one of the executors of the estate of Isaac E. Hoagland, deceased. From a surrogate's decree confirming a referee's report overruling exceptions filed by Sarah Hoagland French to the executor's account, she appeals. Affirmed.

See 64 N. Y. Supp. 920.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

J. Woolsey Shepard, for appellant.

Charles W. Dayton (Joseph E. Bullen, on the brief), for respondent.

WOODWARD, J. This is an appeal by Sarah Hoagland French, a legatee under the will of Isaac E. Hoagland, from a decree of the surrogate of the county of Kings confirming the report of the referee

overruling exceptions to the account of Isaac A. Hopper as one of the executors of said will, and settling said account and discharging said executor. There were three executors, all of whom duly qualified,— Henry P. Robinson, a former partner of the testator; Isaac A. Hopper, the respondent; and Julius K. French, testator's son-in-law, and husband of the appellant. The present controversy relates to a fund of about $11,000,—substantially all the property left by the testator,—which he had turned over to Robinson, apparently for the purpose of a new partnership formed or to be formed between them, shortly before his death on February 28, 1898. The appellant contests Hopper's account because he fails to charge himself, as executor, with the said sum of $11,000. It appears that Robinson was the active executor. He engaged Mr. J. Woolsey Shepard, who had been counsel for the testator, and is counsel for the appellant, to probate the will. He carried on the business in which the testator had invested the $11,000. He received insurance money, and paid it over to the beneficiaries, and paid to Sarah Hoagland French, the appellant, as trustee for the widow, $10 weekly until September, 1899. At various periods between August, 1898, and February, 1899, Hopper advanced to Robinson, for the purposes of the business, sums aggregating about $20,000, and in the latter month executed articles of partnership with him. In the fall of 1899 the executor French requested Robinson to deposit the fund turned over to him by the testator, and now reduced to about $8,000, with a trust company. Robinson not havin complied with this request, upon the petition, verified December 20, 1899, of Elizabeth M. Hoagland, a daughter and a legatee of the testator, and an order of the surrogate of the county of Kings, requiring the executors to show cause, and on the motion of Mr. J. Woolsey Shepard, Robinson was "ordered and directed forthwith to deposit the sum of $8,459, belonging to the estate of Isaac E. Hoagland, deceased, now in his hands as executor as aforesaid, in the Colonial Trust Company." In his affidavit supporting this petition, sworn to on December 19, 1899, the executor French stated that he and his coexecutor Hopper were desirous that the funds of the estate then in the hands of Robinson be deposited with the trust company; and the order of the surrogate directing such a disposition of the funds, and dated April 10, 1900, was made upon the consent of Hopper. Robinson never complied with the order, though it was affirmed by this court (51 App. Div. 348, 64 N. Y. Supp. 920) and by the court of appeals (164 N. Y. 573, 58 N. E. 1088). He became bankrupt and removed from this state.

The learned referee found:

"That all the parties interested either as executors or as beneficiaries acquiesced in Robinson's retention of the fund, and Hopper was never requested to get in the fund. Up to the time of said application, all the parties believed Robinson to be financially responsible and entirely trustworthy. All the parties are equally innocent of the misappropriation of the fund by Robinson; nor did any of them have any knowledge of such misapplication, nor any notice to arouse their suspicion."

He also found as conclusion of law:

"(1) That no property or assets of the estate of Isaac E. Hoagland, deceased, have come into the possession of the executor Isaac A. Hopper. (2)

That the executor Isaac A. Hopper is not responsible for the breach of trust by the executor Henry P. Robinson."

Practically the sole ground urged for reversal is that the executor Hopper was guilty of negligence, in that he did not exercise the ordinary care and prudence in connection with the administration of the estate which he was bound by law to exercise; and the question of the case is "whether the conduct of the executor has been guided by good faith, reasonable judgment, and an intention to fairly and fully discharge his duty. If so, it cannot be that he should still be held liable for a devastavit." O'Connor v. Gifford, 117 N. Y. 275, 280, 22 N. E. 1036.

In Wilmerding v. McKesson, 103 N. Y. 329, 8 N. E. 665, the court say, page 338, 103 N. Y., and page 668, 8 N. E.:

"Where the funds of the estate were lawfully received by one of the executors, or were originally in his hands, or properly paid to him in the due course of administration, and there is nothing to excite suspicion as to the integrity or responsibility of such trustee, or to create a belief that the funds have been improperly used, or invested in violation of the established rules applicable to such cases, or were allowed to remain uninvested, there is no rule which charges the executor or trustee who has not control of the fund with the wrongful acts or misconduct of his associate. If, however, the circumstances are such as to create a doubt in respect to the safety of the funds, a coexecutor is not exonerated from the duty of vigilance in protecting them. If the executor is merely passive, and simply does not obstruct the collection or receipt of assets by his associate, he is not liable for the latter's waste; but where he knows and assents to such misapplication, or negligently suffers his coexecutor to receive and waste the estate when he has the means of preventing it by proper care, he becomes liable for a resulting loss. Croft v. Williams, 88 N. Y. 384."

The court also quote from Williams, Ex'rs (6th Am. Ed. 1820) 9, the general rule as to the liability of one executor for the acts of his coexecutor, as follows:

"A devastavit by one of two executors shall not charge his companion, provided he has not intentionally or otherwise contributed to it, for the testator's having misplaced his confidence in one shall not operate to the prejudice of the other."

Continuing, the court say (page 340, 103 N. Y., and page 669, 8 N. E.):

"For the devastavit of a coexecutor or trustee an executor or trustee is not liable, unless it appears that he had knowledge or assented to the acts done, or had notice which should excite his suspicion and put him on inquiry. This rule is fully sustained by the authorities." (Citing cases.)

In the case at bar the funds were lawfully received by Robinson, and that there was nothing to excite in Hopper's mind any suspicion of his integrity or responsibility is evident from Hopper's intrusting Robinson with about $20,000 of his own money.

"The rule of liability," say the court in Cocks v. Haviland, 124 N. Y. 426, 431, 26 N. E. 976, "does not go so far as to charge an executor having none of the funds of an estate in his possession or under his control with the consequences of the neglect or failure of his coexecutor to make the disposition, by investment or otherwise, of the subject of the trust, pursuant to the direction of a will, where the latter lawfully has the entire fund in his hands, and assumes its management,

unless there is some occasion to suspect that he may fail to execute the will in that respect." (Citing cases.) There was no occasion to suspect Robinson before he neglected the request to deposit the fund, if there was then, and Hopper consented to the proceedings which were then instituted to compel Robinson to make such deposit. Robinson had been the acting executor, and it is significant that the present counsel for the appellant, who was then familiar with the situation, elected to proceed against Robinson. Apparently, it never occurred to any one that Hopper had been guilty of negligence until the failure of the efforts to make Robinson deposit the money. Upon the evidence, and in view of the authorities cited, it seems clear that Hopper is not guilty of such negligence as will charge him with the devastavit of his coexecutor.

It is also claimed by the appellant that Hopper became liable because he was a partner of Robinson; but the evidence shows that he did not become such partner until February, 1899, and, in the absence of an agreement to assume such liability, the incoming partner is not liable for the prior debts of the firm. Peyser v. Myers, 135 N. Y. 599, 32 N. E. 699; Corner v. Mackey, 147 N. Y. 574, 42 N. E. 29.

For the reasons stated, the report of the referee was properly confirmed, and the decree of the surrogate should be affirmed, with costs. All concur.