### VALENTINE *vs.* JACKSON.

A landlord has no right to *distrain and sell* the goods of his tenant for the use and occupation of demised premises, unless the rent by *agreement of the parties* is *certain*, either in *money* or *services*, or is such as may be reduced to certainty.

An *administrator* may bring *trover* in his own name for the goods of his intestate converted previous to the granting of administration, and need not declare in his *representative character*.

THIS was an action of *trover* tried at the Montgomery circuit, in November, 1830, before the Hon. ESEK COWEN, one of the circuit judges.

The action was brought for the taking in September, 1821, of a quantity of wheat and other property a few days after the death of one *Lufbury*, from a farm then lately occupied by him. The plaintiff took out letters of administration on the estate of Lufbury in *October* following, and commenced this suit in May, 1827, in his own name, and not in his *representative character*. The witness who proved the taking of the property, testified that he took it by virtue of a *distress-warrant*, for rent claimed by the defendant to be due to him ; that the property was appraised and sold in September, 1821 ; that the papers relative to the distress were lost, and that he did not remember the amount of rent claimed in the warrant. The defendant objected to a recovery on the grounds, 1. That as the property was taken as a distress for rent, *trover* would not lie ; and 2. That the plaintiff should have declared as *administrator*, which he had not done. The objections were overruled. The defendant then proved *Lufbury's* occupation of the farm for two years, and his admission that he held under the defendant subject to rent, and offered to prove the *annual value* of the farm to enable the jury to determine what would be a reasonable rent for the same ; this evidence was objected to, and the judge ruled that unless the defendant could shew an agreement by *Lufbury* to pay a *sum certain* as rent, the defence could not be sustained, wherefore he rejected the evidence offered, and the jury under his charge found a

verdict for the plaintiff. The defendant having excepted to the decisions of the judge, moved for a new trial.

*D. Cady,* for the defendant.

*M. T. Reynolds,* for the plaintiff.

*By the Court,* NELSON, J. The principal questions presented are, 1. Whether the plaintiff was bound to declare *as administrator* of Lufbury to entitle him to maintain the action ; and 2. Whether the defendant could distrain, no fixed amount of rent having been agreed upon by the parties. It is well settled that an *executor* may maintain an action for an injury done to the goods of his testator, before probate or seizure, as the law adjudges the property of the goods in him, immediately on the death of the testator. He derives his title under the will. The property of the goods being vested in him, the right to the possession necessarily follows, and therefore the suit may be maintained in his individual right without declaring *as executor.* 2 *Selw.* 573, 4, *n.* 6. 1 *T. R.* 480. *Toller,* 46. 11 *Vin.* 132, *pl.* 22, 26. 4 *Cowen,* 90, 1. *Cro. Jac.* 113. This is an inevitable deduction from the fact of the existence of the right of property and possession consequent upon the executorship. It is the individual possession, actual or constructive, of the executor that is violated by the injury to the property, and the redress may be in the same capacity. The *administrator* derives his authority to take the possession and control of the goods of the intestate from the letter of administration. Before this is granted, he has no right to intermeddle with the estate ; but when granted, it relates back to the period of the death of the intestate. By means of this relation, which by operation of law vests the property and consequently the possession of the goods in the administrator, he may maintain an action for an injury to them after the death of the intestate, and before letters, the same as an executor, with only this difference : the latter may commence the suit immediately upon the injury being done, and before probate ; the former cannot until letters of administration are granted. The right of the one accrues immediately upon the death of

the testator, and exists in fact when the wrong is done ; the other accrues upon the grant of the letter of administration, and exists when the wrong is done only by relation.   Both *rights* are equally operative, and the action for an injury to, or destruction of the property of the deceased, is founded upon the possession, actual or constructive, of the individual executor or administrator, and consequently may be maintained in his own name, without declaring in his representative character. 2 *Selw.* 574, *n.* 6.   *Toller*, 133.   11 *Vin.* 130, *tit. Executors, pl.* 7.   *id.* 131, *pl.* 17.   *id.* 132, *pl.* 22. *id.* 25.   1 *Chitty*, 151.

The next question is, whether the defendant had the right to distrain, the amount of the rent not having been fixed or certain.   It is said the *services* or *rent* for which the landlord or lessor may distrain, must be certain, or such as may be reduced to certainty, for otherwise he cannot in his avowry recover damages for the non-performance or non-payment, as the jury cannot determine what damage he has sustained. *Co. Litt.* 96.   *Bacon*, 342, *tit. Distress.*   10 *Johns. R.* 91. 20 *Com. Law R.* 195.   *Bacon, tit. Rent.*   But if a tenant holds of his lord to shear all his sheep feeding in a certain manor, this is sufficiently certain, as it is easy to compute the number, and the expense to which he is subjected in employing others to do the service.   At common law, distresses for rent in arrear could not be sold, but were detained as pledges to enforce the payment if in money, or performance if in services, *Bacon*, 349, *tit. Distress ;* 1 *Selw. N. P.* 503 ;   *Bacon, tit. Rent ;* and these pledges were held until payment or performance, unless the tenant replevied, which shews sufficiently the reason why the rent should be certain, and the nature and degree of certainty requisite ;   for otherwise the tenant would be unable to tender payment or performance.   If the rent is payable in money, he should be enabled to ascertain the sum to be paid ;   if in services, the extent to be rendered.   This he might do if he held for the service of a certain number of day's work, ploughing, &c. or by any other service certain, or which could be rendered certain, as shearing all the sheep on his lord's manor.   This view affords a much moie satisfactory reason for the certainty required in the rent than the one gen-

erally given in the books, to wit, to enable the landlord in the avowry to recover damages before the jury for non-payment or non-performance by the tenant. If before the statute, 2 *W. & M. ch.* 5, incorporated in the 2 *R. S.* 504, § 25, 26, which authorized a sale of the distress, the rent or services had been uncertain or contingent, the pledge would have been perpetual, as the tenant could not have redeemed it by payment or rendition of service; and since the statute, the landlord could not sell, as it obviously contemplates a case where the amount is fixed, the officer being directed out of the proceeds of such sale to satisfy the rent, with costs and charges, and pay the overplus to the tenant. By the revised statutes, when any *certain services* or *certain rent* reserved out of any lands or tenements, shall not be paid or rendered when due, the person entitled thereto may distrain for the same. 1 *R. S.* 747, § 18. Though the act, 2 *R. S.* 504, § 24, which directs the sale of goods distrained for rent, is general in its terms, yet I apprehend it must be limited to a case of a fixed sum of rent due in money: or if payable in any other way, the value must be fixed by the parties in the lease, otherwise how could the officer know the amount to be paid the landlord? There is no statute providing any mode in a case of this kind of ascertaining the amount, when uncertain or unliquidated. A distress in all other instances must be conducted according to the common law, and be held as a pledge until redeemed by the payment or rendition of service, as the case may be. If any other argument was necessary to support this view, it might be drawn from the provision in the statute, which requires the officer, immediately upon making the distress, to give notice thereof to the tenant, with the cause of such distress, and the *amount of rent due.* 2 *R. S.* 504, § 24.

New trial denied.