(18 Misc. Rep. 633.)

## HUTCHINS v. HUTCHINS et al.

### HURLBURT v. SAME.

(Supreme Court, Trial Term, Franklin County.   May, 1896.)

1. **WILLS—PAYMENT OF LEGACIES—PRIMARY FUNDS.**
   A testator devised a remainder in fee to his son, who was named in the will as executor, he to pay to other heirs of testator a certain sum each within five years after the termination of the precedent estate, and made no disposition of his personal property. *Held*, that the land was primarily charged with the payment of the legacies.

2. **ESTOPPEL—INCONSISTENT POSITIONS.**
   One who has defeated an action against himself as executor for certain legacies, on the ground that he is liable personally and not as executor, is thereby estopped from denying his personal liability in a subsequent action for such legacies.

3. **MORTGAGES—LAND CHARGED WITH LEGACY—PRIORITY.**
   Where lands are by devise charged primarily with the payment of certain legacies, a mortgage executed by the devisee to one having constructive notice of the terms of the devise is subject to the lien of the legacies.

Actions by George A. Hutchins against Wallace P. Hutchins, the Agricultural Insurance Company, and Eunice Hurlburt, and by Eunice Hurlburt against Wallace P. Hutchins, the Agricultural Insurance Company, and George A. Hutchins, to have legacies given to plaintiffs by the will of their father adjudged to be a first lien on the real estate of which he died seised and to enforce such lien by a sale of such real estate.   The actions were tried together.   Judgment for plaintiff in each action.

Albert Hobbs, for plaintiff George A. Hutchins.

W. J. Mears, for plaintiff Eunice Hurlburt.

A. H. Sawyer, for defendant Agricultural Insurance Company.

John P. Kellas, for defendant Wallace P. Hutchins.

McLAUGHLIN, J.   In December, 1879, Cyrell Hutchins died, leaving a will, which was admitted to probate, and letters testamentary issued to the executor therein named, the defendant Wallace P. Hutchins, on the 26th day of January, 1880.   That portion of the will which is material to the questions involved is as follows:

"First. After all my lawful debts are paid and discharged, I give and bequeath —1st. I give and bequeath to my beloved wife, Caroline, and to my son, Wallace P. Hutchins, jointly and equally, the whole of my real estate included in the home farm, containing about 250 acres land, to have and to hold the same during the lifetime of my said wife. At her decease, then the same to go to Wallace P. Hutchins, and in case of his decease, then to his heirs; said Wallace P. Hutchins to pay to each of the other heirs herein named the following sums:  To George L. Hutchins, eight hundred dollars; to Eunice Hurlburt and Sophronia S. Langdon, to each, the sum of eight hundred dollars,—to be paid within five years after the decease of myself and wife, without interest."

On the 10th of May, 1886, the defendant Wallace P. Hutchins executed and delivered to the defendant Agricultural Insurance Company a mortgage upon the real estate devised to him, which, among other things, provides:

"Also, all that other piece or parcel of land in Constable and Westville, about 250 acres of land, conveyed by Cyrell Hutchins, Sr., to Wallace P. Hutchins

and Caroline Hutchins, wife of C. Hutchins, jointly,—the home farm. After the death of said Caroline, her interest in said farm goes to Wallace P. Hutchins. Five years after the death of said Cyrell Hutchins, Sr., and wife, said Wallace P. Hutchins is to pay George L. Hutchins, Eunice Hurlburt, and Sophronia Langdon eight hundred dollars each, without interest."

About one year after the execution and delivery of the mortgage, Caroline Hutchins, the widow, died. Cyrell Hutchins left, him surviving, his widow, said Caroline, and the following children: The defendant Wallace P. Hutchins, the plaintiff Eunice Hurlburt, George L. Hutchins, Sophronia Langdon, and Cyrell Hutchins. He left, in addition to the real estate devised, $1,561.19 in personal property, which the executor voluntarily distributed between the widow and the five children. The $800 provided in the will to be paid to George L. Hutchins and Eunice Hurlburt not having been paid, the plaintiffs bring these actions, George A. having taken the interest of George L. by assignment, to recover a judgment establishing the amount thereof, with interest, to be a first lien upon the land mentioned in the will, and decreeing that the same be sold. The actions are resisted by the defendants Wallace P. Hutchins and the Agricultural Insurance Company, mainly, upon the ground that the personal estate of the deceased is the primary fund for the payment of these legacies, and that the payment of the same is by the terms of the will charged upon Wallace P., in aid, and not in exoneration, of the primary fund.

The question, therefore, whether these legacies are a charge upon the real estate, and it or the personal estate is the primary fund out of which they are to be paid, depends upon the intention of the testator, expressed in and to be gathered from the will itself. Certain facts have been held by different judges to be significant, and sometimes controlling, in determining a testator's intent to charge real estate with the payment of legacies. Thus, it has been held, where real estate is devised, after the payment of legacies, that this is sufficient to show such intent. Beach, Mod. Eq. Jur. par. 1057. Also, where the devisee of the real estate is appointed the executor, and is directed to pay the legacies, this has been held sufficient to show an intention that the land devised should be charged with the payment of the legacies. Brown v. Knapp, 79 N. Y. 136. So, too, where the devisee of real estate is directed to pay the legacies, and especially if such direction is contained in the same sentence as the devise. Merritt v. Bucknam, 78 Me. 504, 7 Atl. 383; Harris v. Fly, 7 Paige, 421; Merrill v. Bickford, 65 Me. 118; Bank v. Donaldson, 6 Pa. St. 179. It has also been held that such intention is evidenced by the words: "I direct that the remainder of my whole estate shall be divided among my heirs." Davidson v. Coon, 125 Ind. 497, 25 N. E. 601. Also, that it is not necessary that express words be used to exempt the personal estate from, and to charge the payment of legacies upon, the real estate; that "it is sufficient if there appears upon the will an evident demonstration, a plain intention, a necessary implication." Sweeney v. Warren, 127 N. Y. 437, 28 N. E. 416. But what might be considered sufficient to indicate an intention in one case would be entirely insufficient in another. For this

reason no fixed rule has been or can be established which is applicable to or satisfactory in every case. Each will presented for judicial consideration has its peculiar facts, and its construction must be determined by the intention of the testator as ascertained from those facts; and it matters not whether that intention be clearly expressed in the will, or whether it be fairly and necessarily implied from it.

What, then, was the intention of the testator in reference to the payment of the legacies in question? Did he intend that the same should be paid out of his personal estate, and that the direction to Wallace P. was in aid, and not in exoneration, of it? Or did he intend that the real estate devised to Wallace P. should be the primary fund, and the only fund out of which they were to be paid beyond the individual liability of Wallace P.? It seems to me that there can be but one answer to these questions. The language used indicates an intention that cannot be misunderstood or misconstrued. He says:

"I give and bequeath to my beloved wife, Caroline, and to my son, Wallace P. Hutchins, the whole of my real estate included in the home farm, containing 250 acres of land * * * during the life of my said wife. At her decease, the same to go to Wallace P. Hutchins; * * * said Wallace P. Hutchins to pay to each of the other heirs herein named the following sums, * * * to be paid within five years after the decease of myself and wife, without interest."

The use of the word "heirs" is significant. It indicates that the testator understood that, except for the will he was making, the heirs named by him would by law inherit this real estate equally with the son Wallace P., and that he desired to compensate them in some degree for taking from them that which the law would otherwise give, such compensation to be paid by Wallace P. as a condition of the devise. This intent is also manifest in the first clause of the will. He says: "After my lawful debts are paid and discharged." He does not direct Wallace P. to pay his debts; neither does he select any fund out of which they shall be paid. He did this because he intended that his debts should be paid out of his personal estate; but, as to the legacies, he directs that Wallace P. shall pay them, and, in the manner in which he directed such payment to be made, intended that the same should be paid out of the real estate in case of the failure of Wallace P. to make such payment. His intention is also quite manifest by the time when he directs Wallace P. to pay. He is not to pay until five years after the death of himself and wife, and then such payment is to be made without interest. If these legacies were to be paid out of the personal estate, why did the testator postpone the time of payment for that period? Again, if he did not intend that the land devised should be the primary fund for the payment of these legacies, why did he not dispose of his personal estate? For the reason, as it seems to me, that, by not disposing of that, and by devising all of his real estate to Wallace P., and directing him to pay, his intention would be so manifest that it could not be misunderstood. The farm could not well be divided among all his children, but it could all be devised to one, and that one required to pay to the others

an amount which to the testator seemed just; and this is just what the testator, in my judgment, sought to do. And, when Wallace P. accepted the conditions of the will by entering into possession of the land devised, he then became obligated to pay the legacies in question; and he can be compelled to do so by the legatees, either in an action at law, or by a suit in equity to obtain a lien upon the land itself. Thus, it was held, in Brown v. Knapp, 79 N. Y. 136, where a legacy was given and directed to be paid by an executor, who was a devisee of real estate, that such estate could be charged with the payment of the legacy, and the devisee, upon accepting the devise, became personally liable to pay; and this although the land devised to him proved to be less in value than the legacy. It was also held that the payment of such legacy could be enforced by a suit in equity against the real estate, or by an action directly against the devisee upon the promise to pay implied by the acceptance. See, also, Gridley v. Gridley, 24 N. Y. 130; Birdsall v. Hewlett, 1 Paige, 32.

In Harris v. Fly, 7 Paige, 421, the chancellor delivering the opinion said:

"If the testator, therefore, gives a legacy, without specifying who shall pay it, or out of what fund it shall be paid, the legal presumption is that he intended it should be paid out of his personal estate only; and, if that is not sufficient, the legacy fails. So, if he directs his executors to pay a legacy, without giving to them any other fund than the personal estate out of which they can pay it. But, where the real estate is devised to the person who by the will is directed to pay the legacy, it has frequently been decided that such legacy is an equitable charge upon the real estate so devised, although the devisee is also the executor, or is the residuary legatee of the personal estate, unless there is something in the will itself to indicate a contrary intention on the part of the testator."

See Loder v. Hatfield, 71 N. Y. 92; Lord v. Lord, 22 Conn. 602.

It seems clear that the legacies in question are a charge upon the real estate devised, and that it is the primary fund for the payment of the same. In reaching the foregoing conclusion, the cases cited by the defendants have not been overlooked. The strongest case, perhaps, is that of Hoes v. Van Hosen, 1 N. Y. 120; but that, it seems to me, is clearly distinguishable from this. There the testator gave to his two sons, John and George, certain real estate, and directed John and George to pay certain legacies,—some of them "to be paid in one year after his decease." The testator then gave to his wife, during her lifetime or widowhood, "the use and income of all" his estate. The son George, at the time of the death of the testator, was but 16 years of age. He had no property, or any means of paying his share of the legacies which he was directed to pay, except the property devised and bequeathed to him by his father, and this was subject to the estate of his mother during her life; and to have held, under such a will, that it was the intent of the testator that the legacies were to be paid personally by John and George would have been to impute to the father a dishonest intention, because, George being under age, the law presumes that he knew George had nothing with which to pay.

I think, however, the defendant Wallace P. is estopped from denying his personal liability. It appears from an opinion written by

Mr. Justice Kellogg, and it was conceded upon the argument before me, that these plaintiffs jointly brought an action against the defendant Wallace P. as executor, and that he interposed a demurrer to the complaint, and, in sustaining the demurrer, the learned justice said:

"It will be seen, by the provisions of this will, that such legacies are not general legacies, to be paid out of the estate of the testator. No portion of the personal property of the testator could be used in the payment of these sums, or any part. The land is made the primary fund, and the only fund, beyond the individual liability of Wallace P. Hutchins, provided he accepted the devise. * * * No duty is imposed upon the executor respecting such payment, and it necessarily follows that the executor of the will of Cyrell Hutchins, deceased, is not a proper party defendant in any action to enforce that payment."

Having thus succeeded in defeating that action upon the ground that he was not liable as executor, he cannot now be heard to say that he is not liable individually because he is liable as executor.

I think, for another reason, he is estopped from claiming that these legacies are payable out of the personal estate of the deceased. The personal estate he distributed, on the assumption that the testator died intestate in reference to that. Having thus voluntarily made such distribution, he cannot now be heard to say that these legacies are payable out of a fund which, by reason of his own act, does not exist. And it is to be noted, in this connection, that in the mortgage which he gave to the insurance company he says that he is to pay these legacies, not as executor, but personally. The language is:

"Five years after the death of Cyrell Hutchins, Sr., and wife, said Wallace P. Hutchins is to pay George L. Hutchins, Eunice Hurlburt, and Sophronia Langdon eight hundred dollars each, without interest."

The Agricultural Insurance Company took the mortgage in question after the will of Cyrell Hutchins had been admitted to probate, and therefore it had presumptive knowledge of its contents. It had constructive knowledge, at least, that the only title which the mortgagor had was that devised through the will,—that whatever lien it acquired would be subject to the lien of the legatees. It follows, therefore, that the charge of these legacies upon the real estate is superior to the lien of the mortgage, and should be enforced in preference to it, unless some reason exists which enables the insurance company to insist, for its protection, that payment shall first be sought from Wallace P. Hutchins. It cannot, however, insist upon that, for the reason that its lien is by the terms of the mortgage itself made subject to the lien of these legatees. In the description of the premises, and as a part of it, is a statement that the mortgagor is to pay the amount here claimed. Under the facts of this case, such statement, irrespective of the testator's intent, creates a lien upon the land superior to the mortgage.

The plaintiffs are entitled to judgment, with costs, against the defendant Wallace P. Hutchins in each action to the time of trial, and one trial fee.